UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| CROWN DISTRIBUTING LLC, § | |
| § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | CIVIL ACTION NO. 3:21-CV-1052-B |
| § | |
| ICE SUPPZ, LLC, NALPDOG LLC, and § | |
| JOSH BECKER, § | |
| § | |
| Defendants. § | |

### MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff Crown Distributing LLC ("Plaintiff" or "Crown")'s Motion for Entry of Default Judgment (Doc. 26). For the reasons discussed below, the Court **GRANTS IN PART** and **DENIES IN PART** the motion.

### I.

### BACKGROUND[1]

This case arises from a contract for the purchase of hemp biomass. "Crown is a Dallas-based manufacturer and distributor of hemp-derivative goods." Doc. 1, Compl., ¶ 32. Defendant Josh Becker ("Becker") "brokers transactions for sourcing and purchasing of raw hemp plant material." *Id.* ¶ 33. Defendant Ice Suppz, LLC ("Ice Suppz") "is a brokerage firm/supplier that offers and provides services for sourcing raw hemp plant material." *Id.* ¶ 34. Defendant Nalpdog, LLC, ("Nalpdog") "is an entity that offers and provides services for sourcing and providing raw hemp plant

---

[1] This factual statement is derived from Plaintiff's Complaint (Doc. 1) unless otherwise noted.

material." *Id.* ¶ 35. Becker is the sole member of Ice Suppz and Ice Suppz is the sole member of Nalpdog. *Id.* ¶¶ 17, 19, 36.

In 2020, Crown hired Becker to broker a purchase of "38,000 pounds of hemp biomass with a [cannabidiol ('CBD')] content of 8.5% and 12,000 pounds of hemp biomass with a CBD content of 4.5%." *Id.* ¶¶ 36, 40. Becker told Crown that Ice Suppz could supply the material and invoiced Crown through Nalpdog, indicating payment should be made directly to Ice Suppz. *Id.* ¶¶ 39–40, 42. Crown was unaware at the time of the relationship between Becker, Ice Suppz, and Nalpdog (collectively, "Defendants"). *Id.* ¶ 36. In May 2020, Crown wired "$200,000.00 . . . directly to Ice Suppz." *Id.* ¶ 43. About a week later, Ice Suppz delivered some of the material, but upon inspection, "[the goods received] did not meet the [contract's] quality parameters." *Id.* ¶ 44. "Crown immediately rejected acceptance, requested that Ice Suppz pick up the nonconforming goods, and notified Ice Suppz that the material was unacceptable and that it had rejected the goods." *Id.* ¶ 45. "In response to Crown's rejection of the biomass[] material, . . . Becker admitted via text message, '[i]t's wrong. My people f****ed [sic] up.'" but "assured Crown [he and Ice Suppz] would rectify the issue." *Id.* ¶¶ 46–47 (second alteration in original).

"Relying on representations . . . that acceptable substitute material would be provided," Crown waited for Ice Suppz to cure but eventually began demanding "the return of its $200,000.00 and pickup of the . . . nonconforming goods." *Id.* ¶¶ 48–49. About six months later, Becker and Ice Suppz delivered approximately 15,000 pounds of again nonconforming hemp material to Crown, which Crown "again immediately rejected . . . , informed . . . Becker and Ice Suppz of the rejection . . . and requested [that] Ice Suppz . . . pick up the approximate [sic] 40,000 total pounds of nonconforming goods from [Crown's] facility." *Id.* ¶ 51. "Crown was never provided with acceptable

substitute material" and "its $200,000.00 was never returned." *Id.* ¶ 54.

On May 10, 2021, Crown filed its complaint against Defendants. Doc. 1, Compl. The complaint was served on Ice Suppz and Nalpdog on May 13, 2021. Doc. 5, Ice Suppz Return of Summons, 2; Doc. 6, Nalpdog Return of Summons, 2. The Clerk made entry of default against Ice Suppz and Nalpdog on August 3, 2021. Doc. 13, Entry of Default. After multiple attempts, Becker was finally served on September 29, 2021. Doc. 23, Return of Service, 1. Default was entered against Becker on October 26, 2021. Doc. 25, Entry of Default. On November 19, 2021, Crown moved for default judgment against all Defendants. Doc. 26, Mot. for Default J. Defendants failed to respond to Crown's motion and the time to do so has passed. Accordingly, the motion is ripe for determination and the Court considers it below.

## II.

## LEGAL STANDARD

Federal Rule of Civil Procedure 55 provides for the entry of default judgments in federal court. According to Rule 55, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, . . . the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Once default has been entered, the court may enter a default judgment against the defaulting defendant upon motion of the plaintiff. Fed. R. Civ. P. 55(b).

"Default judgments are a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations." *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989) (footnote omitted). "A party is not entitled to a default judgment" merely because "the defendant is technically in default." *Ganther v. Ingle*, 75 F.3d 207, 212 (5th Cir. 1996). "Rather, a default judgment is generally committed to the discretion of the district court." *United*

*States v. 1998 Freightliner Vin #: 1FUYCZYB3WP886986*, 548 F. Supp. 2d 381, 384 (W.D. Tex. 2008) (citing *Mason v. Lister*, 562 F.2d 343, 345 (5th Cir. 1977)).

In determining whether a default judgment should be entered against a defendant, courts have developed a three-part analysis. *See, e.g., id.* First, courts consider whether the entry of default judgment is procedurally warranted. *See Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998). The factors relevant to this inquiry include:

> [1] whether material issues of fact are at issue; [2] whether there has been substantial prejudice; [3] whether the grounds for default are clearly established; [4] whether the default was caused by a good faith mistake or excusable neglect; [5] the harshness of a default judgment; and [6] whether the court would think itself obliged to set aside the default on the defendant's motion.

*Id.*

Second, courts assess the substantive merits of the plaintiff's claims and determine whether there is a sufficient basis in the pleadings for the judgment. *See Nishimatsu Constr. Co., Ltd. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) (noting that "default is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover"). In doing so, the Court is to assume that the defendant admits all well-pleaded facts in the plaintiff's complaint. *Id.* However, "[t]he defendant is not held to admit facts that are not-well pleaded or to admit conclusions of law." *Id.*

Third, courts determine what form of relief, if any, the plaintiff should receive. *Ins. Co. of the W. v. H & G Contractors, Inc.*, 2011 WL 4738197, at *4 (S.D. Tex. Oct. 5, 2011) ("A defendant's default concedes the truth of the allegations of the Complaint concerning the defendant's liability, but not damages.") (citing *Jackson v. FIE Corp.*, 302 F.3d 515, 524–25 (5th Cir. 2002)). Normally, damages are not to be awarded without a hearing or a demonstration by detailed affidavits

establishing the necessary facts. *See United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979). However, if the amount of damages can be determined with mathematical calculation by reference to the pleadings and supporting documents, a hearing is unnecessary. *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993).

## III.

## ANALYSIS

First, the Court finds that entry of a default judgment is procedurally warranted. Next, considering the substance of the claims, the Court finds a sufficient basis in the pleadings for entry of default judgment on Crown's breach-of-contract claim against Becker and Ice Suppz. However, the Court finds that: the fraud, negligent misrepresentation, and negligence claims against Defendants are likely barred by Texas's economic loss rule; Crown may not receive judgment for both unjust enrichment and breach of contract from Becker and Ice Suppz; and Crown has not stated a claim for unjust enrichment against Nalpdog. The Court therefore denies entry of default judgment on all but the breach-of-contract claim. Finally, because Crown has prevailed on only its breach-of-contract claim against Becker and Ice Suppz, and has not segregated its fees, the Court declines to award attorneys' fees at this time and instructs Crown to file a supplemental motion for attorneys' fees, costs, and prejudgment interest in light of this Order. But, the Court enters an award of actual damages for breach of contract and postjudgment interest against Becker and Ice Suppz.

A. *Whether an Entry of Default Judgment is Procedurally Warranted*

The court finds that default judgment is procedurally warranted after considering the *Lindsey* factors. *See Lindsey*, 161 F.3d at 893. First, there are no disputed material facts because Defendants did not file any responsive pleadings. *See Nishimatsu Constr. Co.*, 515 F.2d at 1206. Second,

Defendants' "failure to respond threatens to bring the adversary process to a halt, effectively prejudicing [Crown's] interests." *See H & G Contractors, Inc.*, 2011 WL 4738197, at *3. Third, there is no evidence before the Court that indicates that Defendants' silence results from a "good faith mistake or excusable neglect." *See Lindsey*, 161 F.3d at 893. Fourth, Crown's complaint was served on Ice Suppz and Nalpdog almost one year ago, Doc. 5, Ice Suppz Return of Summons, 2; Doc. 6, Nalpdog Return of Summons, 2, while Becker was served over six months ago. Doc. 23, Return of Service, 1. Defendants' complete failure to respond "mitigate[s] the harshness of a default judgment." *See John Perez Graphics & Design, LLC v. Green Tree Inv. Grp., Inc.*, 2013 WL 1828671, at *3 (N.D. Tex. May 1, 2013). Finally, the Court is unaware of any circumstances that would require it to set aside the default judgment if challenged by Defendants. *See Lindsey*, 161 F.3d at 893. Therefore, the procedural requirements for granting default judgment are met.

B.  *Whether There is a Sufficient Basis for Judgment in the Pleadings*

Defendants are deemed to have admitted the well-pleaded allegations set forth in Crown's complaint. *See Nishimatsu Constr. Co.*, 515 F.2d at 1206. Nonetheless, the Court must review the pleadings to determine whether they present a sufficient basis for Crown's claims for relief. *See id*. In conducting this analysis, the Fifth Circuit has looked to the Rule 8 case law[2] for guidance:

> Rule 8(a)(2) requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of this requirement is "to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47(1957)). The factual allegations in the complaint need only

---

[2] The heightened pleading standard of Rule 9(b) would apply to Crown's fraud claim. *Cf. Thomas v. Cadwalander*, 2022 WL 1158261, at *4 (N.D. Tex. Mar. 17, 2022), *report & recommendation adopted sub nom. Thomas v. Terry*, 2022 WL 1158011 (N.D. Tex. Apr. 19, 2022) (applying the Rule 9(b) pleading standard to a fraud claim in a motion for default judgment). However, the Court need not address the sufficiency of Crown's fraud claim's pleading because it is barred by Texas's economic loss rule. *See infra* Section III(B)(2).

> "be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (footnote and citations omitted). "[D]etailed factual allegations" are not required, but the pleading must present "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

*Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 498 (5th Cir. 2015) (alterations in original). Although the Court assumes that Defendants admit the well-pleaded facts in the Amended Complaint, Defendants "[are] not held to admit facts that are not well-pleaded or to admit conclusions of law." *See Nishimatsu Constr. Co.*, 515 F.2d at 1206.

As a threshold matter, Texas law applies to Crown's claims. *See Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). Crown asserts five claims: (1) breach of oral contract against Ice Suppz and Becker; and (2) fraud, (3) negligence, (4) negligent misrepresentation, and (5) unjust enrichment against all Defendants. Doc. 1, Compl., ¶¶ 57–84. Crown seeks actual damages of $200,000.00, prejudgment and postjudgment interest, and attorneys' fees and costs pursuant to Tex. Civ. Prac. & Rem. Code § 38.001. *Id.* ¶¶ 85–86; Doc. 26, Mot. Default J., ¶ 21.

    1.    <u>Breach of Oral Contract Against Becker and Ice Suppz</u>

Crown pleads facts sufficient to support its claim for breach of contract. Under Texas law, the elements of a breach of contract claim are: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Smith Int'l, Inc. v. Egle Grp., LLC*, 490 F.3d 380, 387 (5th Cir. 2007) (citing *Valero Mktg. & Supply Co. v. Kalama Int'l L.L.C.*, 51 S.W.3d 345, 351 (Tex. App.—Houston [1st Dist.] 2001, no pet.)).

Recovery under contracts relating to the sale of goods is governed by chapter two of the

Texas Business and Commerce Code. Tex. Bus. & Com. Code Ann. § 2.102; *see Selectouch Corp. v. Perfect Starch, Inc.*, 111 S.W.3d 830, 834 (Tex. App.—Dallas 2003, no pet.). A breach-of-contract claim under this chapter exists when "a party fails to deliver the goods as promised." *Baker Hughes Process & Pipeline Servs., L.L.C. v. UE Compression, L.L.C.*, 938 F.3d 661, 666 (5th Cir. 2019) (quoting *Omni USA, Inc. v. Parker-Hannifin Corp.*, 964 F. Supp. 2d 805, 812 (S.D. Tex. 2013)). "[D]amages are only permitted . . . when the seller has failed to deliver the goods, the buyer has rejected the goods, or the buyer has revoked his acceptance." *Luig v. N. Bay Enters., Inc.*, 817 F.3d 901, 906 (5th Cir. 2016) (quoting *A.O. Smith Corp. v. Elbi S.P.A.*, 123 F. App'x 617, 619 (5th Cir. 2005)). Upon receipt of nonconforming goods, a buyer may reject the goods within a reasonable time after their delivery but must also notify the seller of their rejection. Tex. Bus. & Com. Code Ann. §§ 2.601, 2.602.

There is sufficient evidence in the pleadings to find that Crown entered into an oral contract with Ice Suppz and Becker and that Crown performed. Crown pleads that it agreed with Becker that Becker was to source for Crown 38,000 pounds of hemp biomass with a CBD content of 8.5 percent, and another 12,000 pounds of hemp biomass with a CBD content of 4.5 percent. Doc. 1, Compl., ¶ 38. Crown further pleads that Becker was acting in the transaction as an agent for Ice Suppz, an undisclosed principal, so both Becker and Ice Suppz are parties to the contract.[3] *Id.* ¶ 57. Crown

---

[3] "Under Texas law, an undisclosed principal is liable for contracts made by his agent as long as the agent is acting within the scope of his authority . . . [and] may be liable, even when the agent acts without authority, when the principal retains the benefits of the transaction" *N.K. Parrish, Inc. v. Sw. Beef Indus. Corp.*, 638 F.2d 1366, 1370–71 (5th Cir. 1981) (footnote omitted) (first citing *Med. Pers. Pool of Dall., Inc. v. Seale*, 554 S.W.2d 211, 213 (Tex. App.—Dallas, 1977, writ ref'd n.r.e.); and then citing *Owen v. King*, 84 S.W.2d 743, 749–50 (Tex. App.—Amarillo, 1935), *rev'd on other grounds*, 111 S.W.2d 695 (1938)). The undisclosed principal's agent is also liable for the breach of contract. *See Latch v. Gratty, Inc.*, 107 S.W.3d 543, 546 (Tex. 2003) (citing *Heinrichs v. Evins Pers. Consultants, Inc., No. One*, 486 S.W.2d 935, 937 (Tex. 1972)).

Here, Crown pleads that Becker is the sole member of Ice Suppz, and, although he posed as a broker

alleges it sent $200,000.00 by wire payment directly to Ice Suppz, which subsequently provided hemp biomass. *Id.* ¶¶ 43–44. These facts, which Defendants are deemed to admit, are sufficient evidence of a contract and of Plaintiff's performance.

The pleadings also sufficiently establish that Ice Suppz and Becker breached the contract. Plaintiff asserts that Ice Suppz sent nonconforming goods, as Becker admitted via text. *Id.* ¶¶ 44, 46. Crown immediately notified Ice Suppz that the material was nonconforming and that it was rejecting the goods, constituting a proper rejection of the delivery. *Id.* ¶ 45. Ice Suppz's attempt to cure the defect months later was unsuccessful. *Id.* ¶ 51.

Finally, Crown adequately pleads that it was injured by the breach. Crown paid Ice Suppz $200,000.00, which has not been returned. *Id.* ¶ 54. This establishes an injury caused by Ice Suppz's and Becker's breach of the contract.

Therefore, the motion for default judgment against Defendants Becker and Ice Suppz for breach of contract is **GRANTED**.

    2.    <u>Fraud, Negligent Misrepresentation, and Negligence Against All Defendants</u>

Under Texas law, a "contractual relationship . . . may create duties under both contract and tort law." *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex. 1986) (citing *Montgomery Ward & Co. v. Scharrenbeck*, 204 S.W.2d 508 (Tex. 1947)). "The nature of the injury most often determines which duty or duties are breached." *Id.* When the only claimed injury is "economic loss

---

for this transaction, Becker never informed Crown of his agency relationship with Ice Suppz. Doc. 1, Compl., ¶¶ 17, 36. Becker agreed to the sale and asked that the payment be submitted to Ice Suppz. *Id.* ¶ 40. Because Becker allegedly agreed to the deal on behalf of Ice Suppz and because Crown did not know of Becker's relationship with Ice Suppz, the Court finds Becker was an agent with an undisclosed principal—Ice Suppz. So, both Ice Suppz and Becker are parties to the contract and both are liable for the breach of contract. *See Latch*, 107 S.W.3d at 546; *N.K. Parrish, Inc.*, 638 F.2d at 1370.

to the subject of a contract itself, the action sounds in contract alone[,]" and the economic loss rule applies to bar damages from tort claims. *Id.* (citing *Mid-Continent Aircraft Corp. v. Curry Cnty. Spraying Serv.*, 572 S.W.2d 308, 312 (Tex. 1978)); *Formosa Plastics Corp. USA v. Presidio Eng'rs. & Contractors, Inc.*, 960 S.W.2d 41, 46 (Tex. 1998) (explaining that where an independent duty exists the economic loss rule may not apply).

Here, Crown has not alleged that Defendants owed Crown any independent duty beyond performance under the contract. *See* Doc. 1, Compl., ¶¶ 62, 64–67, 69, 72, 74–79. Instead, the fraud, negligence, and negligent-misrepresentation claims "appear to merely recast [Crown's] breach-of-contract claims as a tort." *See Blackhawk Paving, Inc. v. CPCM, LLC*, 2021 WL 1152836, at *2 (E.D. Tex. March 26, 2021) ("As described in [plaintiff]'s Original Complaint, its fraud and negligent-misrepresentation claims are premised entirely on [defendant's] failure to meet its contractual promise and obligation to make complete payment to [plaintiff] for the work performed under the parties' agreement."); *Peco Const. Co. v. Guajardo*, 919 S.W.2d 736, 739 (Tex. App.—San Antonio 1996, writ denied) (stating that plaintiff's fraud recovery can be sustained only if the evidence supports the jury's finding of fraud independent of the contract action). Therefore, the Court finds that Crown's pleadings do not provide a sufficient basis to conclude that the fraud, negligent-misrepresentation, and negligence claims survive Texas's economic loss rule. For this reason, Plaintiff's motion for default judgment on the fraud, negligence, and negligent-misrepresentation claims is **DENIED**.

   3. <u>Unjust Enrichment Against All Defendants</u>

Because the Court has found that Ice Suppz and Becker breached the oral contract with Crown, Crown may not recover from these parties under the quasi-contract theory of unjust

enrichment. *See Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 684 (Tex. 2000) ("Generally speaking, when a valid, express contract covers the subject matter of the parties' dispute, there can be no recovery under a quasi-contract theory." (citing *TransAmerican Nat. Gas Corp. v. Finkelstein*, 933 S.W.2d 591, 600 (Tex. App.—San Antonio 1996, writ denied)); *see also* Doc. 1, Compl., ¶ 81 (implying that the unjust enrichment claim is an alternative to the breach-of-contract claim).

As to Nalpdog, the Court finds that Crown has not adequately pled that Nalpdog received the payment or has refused to return it. *See* Doc. 1, Compl., ¶¶ 40, 42–43, 84. Crown pleads that the invoice Becker provided to Crown for the hemp biomass was issued by Nalpdog but required payment to Ice Suppz. *Id.* ¶ 40. Crown has not pleaded that Nalpdog is Becker's and/or Ice Suppz's alter ego or that Nalpdog received or retained Crown's payment. *See* Doc. 1, Compl.; *Clapper v. Am. Realty Invs., Inc.*, 2015 WL 3504856, at *8–11 (N.D. Tex. June 3, 2015) (dismissing unjust enrichment claims against defendants where the plaintiffs did not plausibly allege that the assets were in those defendants' possession and the elements of alter ego liability were not proven). Absent such facts, the Court finds no sufficient basis in the pleadings to grant default judgment on the unjust enrichment claim against Nalpdog.

Therefore, the Court **DENIES** the motion for default judgment on the unjust-enrichment claim.

C.    *Damages*

Finally, the Court turns to the issue of damages. Plaintiff requests actual damages, prejudgment and postjudgment interest, attorneys' fees, and costs. The Court considers each in turn.

1.    Actual Damages

Courts routinely find that copies of contracts, invoices, purchase orders, emails with payment

details, and statements of anticipated costs, together with computations and affidavits, are a sufficient evidentiary basis for a damages award. *See, e.g., Can Cap. Asset Servicing, Inc. v. Azket E-Intel. LLC*, 2021 WL 2474159, at *4 (N.D. Tex. June 17, 2021). Here, Crown requests $200,000.00 in actual damages based on the amount it paid pursuant to the contract. Doc. 1, Compl., ¶¶ 55, 60. In support of its request, Plaintiff submitted a copy of the invoice and wire transfer showing the amount paid under the contract for the material that should have been delivered. Doc. 26-1, Mot. Default J., 5–6. The Court accepts the invoice and wire transfer amount and finds that the amount of damages owed to Plaintiff by Defendants Becker and Ice Suppz is capable of mathematical calculation based on these supporting documents. *See James*, 6 F.3d at 310. Therefore, the Court **GRANTS** Plaintiff's request for damages in the amount of $200,000.00.

2.  Prejudgment and Postjudgment Interest

Plaintiff also requests prejudgment and postjudgment interest. Doc. 14, Mot. Default J., 5. Plaintiff has not provided any authority for why it is entitled to prejudgment interest or how the Court should calculate such interest. *See id.; see also Paisano Cap. SA de CV v. 23 Tex. Produce, Inc.*, 2019 WL 3239152, at *5 (N.D. Tex. July 18, 2019) (applying the statutory rate set out in Texas Finance Code § 302.002 to a common-law claim); *but see Aguacates Seleccionados JBR USA, LLC v. Bucks Fresh Produce, LLC*, 2020 WL 2193501, at *12 (S.D. Tex. May 6, 2020), *on reconsideration*, 2020 WL 4883898 (S.D. Tex. Aug. 20, 2020) (applying the postjudgment interest rate rather than the statutory rate). Accordingly, the Court finds it lacks a sufficient basis on which to award prejudgment interest at this time. The Court therefore **DENIES** the request for an award of prejudgment interest but will allow Plaintiff to renew its request in a supplemental motion as described at the conclusion of this Order.

"[Postjudgment] [i]nterest shall be allowed on any money judgment in a civil case recovered in district court." 28 U.S.C. § 1961(a). Postjudgment interest "shall be calculated from the date of the entry of judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve system, for the calendar week preceding the date of the judgment." *Id.* Therefore, the Court **GRANTS** Plaintiff's request for postjudgment interest on all damages awarded herein, at the statutory rate, from the entry of this Default Judgment until paid.

### 3. Attorneys' Fees and Costs

#### i. *Attorneys' fees*

Plaintiff requests an award of reasonable attorneys' fees. Doc. 1, Compl., ¶ 86. A prevailing party in a civil action may recover attorneys' fees in a claim for an oral or written contract. Tex. Civ. Prac. & Rem. Code Ann. § 38.001(8); *see also* Fed. R. Civ. P. 54(d)(2). While "§ 38.001(8) uses the term 'may,' the Texas Supreme Court has declared that attorneys' fees under section 38.001 are not discretionary." *Kona Tech. Corp. v. S. Pac. Transp. Co.*, 225 F.3d 595, 603 n.2 (5th Cir. 2000) (citing *Bocquet v. Herring*, 972 S.W.2d 19, 20 (Tex. 1998)). This is true even in the default judgment context. *See McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1488 (5th Cir. 1990) (upholding an award of attorneys' fees granted as part of a default judgment). However, the Texas Supreme Court has also held that when a party bringing multiple claims does not prevail on all claims, attorneys' fees must be segregated to the extent feasible. *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 314 (Tex. 2006). Therefore, the Court **DENIES** an award of attorneys' fees at this time. Plaintiff may file a supplemental motion for attorneys' fees as stated at the conclusion of this Order.

*ii.   Costs*

A prevailing party in a civil action is entitled to recover its costs unless a federal statute, the federal rules, or the court provides otherwise. *See* Fed. R. Civ. P. 54(d)(1). Taxable court costs include: (1) fees paid to the clerk and marshal; (2) court reporter fees for all or part of the deposition transcript; (3) witness fees and related expenses; (4) printing costs; and (5) fees for copies of papers necessarily obtained for use in the case. 28 U.S.C. § 1920. Here, Plaintiff seeks $2,075.85 in costs, including $1,314.50 incurred by Plaintiff's counsel's prior law firm and $761.35 incurred by Plaintiff's counsel's current law firm. Doc. 26-1, Ritter Aff., ¶ 15. The costs sought include employing private process servers and a private investigator. Doc. 26-1, Ritter Aff., ¶ 15; Doc. 26-1, Ex. 1, 20; Doc. 26-1, Ex. 2, 24–25; Doc. 26-1, Ex. 3, 32.

The Court finds that the requested fees for filing, service of process, postage, and online research generally appear reasonable and taxable under the law. *See Blake Box v. Dall. Mex. Consulate Gen.*, 2014 WL 3952932, at *6 (N.D. Tex. Aug. 8, 2014), *aff'd sub nom. Box v. Dall. Mex. Consulate Gen.*, 623 F. App'x 649 (5th Cir. 2015). However, private investigator fees are not recoverable costs. *See San Jacinto Sav. v. Kacal*, 1993 WL 455886 at *1 (5th Cir. Oct. 27, 1993) (per curiam) (stating private investigator fees are "not recoverable costs under 28 U.S.C. § 1920"). Further, private process server fees are not recoverable costs in the Fifth Circuit unless there is a showing of exceptional circumstances warranting them. *BITX Transp. Servs., LLC v. Forward Transp. Servs., LLC*, 2021 WL 4990805, at *7 & n.6 (N.D. Tex. Oct. 27, 2021); *see Marmillion v. Am. Int'l Ins. Co.*, 381 F. App'x 421, 431 (5th Cir. 2010) (citing *Cypress-Fairbanks Indep. Sch. Dist. v. Michael*, 118 F.3d 245, 257 (5th Cir. 1997)). Crown does not allege that there are exceptional circumstances warranting costs for private process server fees. *See* Doc. 1, Compl.; Doc. 26, Mot. Default J. Therefore, the Court

**DENIES** Plaintiff's request for costs at this time but will allow Plaintiff to submit a revised request for costs in its supplemental motion, as permitted below.

## IV.

## CONCLUSION

For the above stated reasons, the Court **ORDERS** the following:

The Court **GRANTS** Default Judgment against Defendants Becker and Ice Suppz on the breach-of-contract claim.

The Court **DENIES** the motion as to the fraud, negligence, negligent-misrepresentation, and unjust-enrichment claims against Defendants.

The Court **AWARDS** damages against Becker and Ice Suppz in the following amounts:

- actual damages in the amount of $200,000.00, and

- postjudgment interest on all sums awarded herein, at the statutory rate, from the date of this Order until paid.

The Court **DENIES WITHOUT PREJUDICE** an award of prejudgment interest, costs, and attorneys' fees and allows Plaintiff to file a supplemental motion seeking prejudgment interest, costs, and attorneys' fees recoverable on the breach-of-contract claim against Becker and Ice Suppz. Any such motion shall be filed within **THIRTY (30) DAYS** of this Order.

**SO ORDERED.**

**SIGNED:** May 13, 2022.

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE